Filed 5/15/14  In re Evan G. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re EVAN G., a Person Coming Under the Juvenile Court Law. | B251442 (Los Angeles County Super. Ct. No. CK98499) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>HECTOR M.,<br><br>　　Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Presumed father Hector M. appeals from the juvenile court's orders sustaining jurisdiction over his child, Evan G., under Welfare and Institutions Code section 300, subdivisions (b) and (d),[1] and removing Evan from his custody. We reject his contention that there is insufficient evidence to support the orders and affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2013, the Department of Children and Family Services (DCFS or the Department) filed a juvenile dependency petition under section 300, subdivisions (b) and (d), with regard to Evan, who was then almost two years old. The petition alleged, as to both subdivisions, that father sexually abused Evan "by inflicting redness to the child's anus and placing fluid on the child's anus. Such sexual abuse of the child by the father endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger and sexual abuse."

According to the detention report and jurisdiction/disposition report, father did not live with Evan's mother, but he spent significant time at the home. On March 8, 2013, father was bathing Evan, something father usually didn't do, and he locked the bathroom door. Mother had been sexually abused as a child, and she had discussed her past with father: " '[S]o he knows how I am about closed doors or locked doors when my children are behind the doors. He knows this and it raised a red flag for me that day.' "

Mother knocked on the door. She heard the shower being turned off and the toilet flush. It took father two to three minutes to open the door. He told mother that he'd locked the door because he needed to use the toilet, and he turned off the shower before flushing the toilet so the sudden rush of cold water would not startle Evan. Mother believed this was a lie because father knew that this did not happen in her home.

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

When father opened the door, mother saw Evan standing naked in the bathtub, shivering and "glossy" eyed. Mother asked father why he turned off the shower, and he answered, " 'Oh my god. I can't believe you think that about me.' " Mother finished bathing Evan. After drying him, she saw a " 'white fluid' " on Evan's anus and redness on his rectal area. Father commented on a " 'rash' " he'd seen on Evan's rectal area. He asked, " '[W]hat's that smell? . . . [Y]ou know who I never trusted . . . your dad.' "[2] Mother also noticed a smell of male ejaculate from Evan's rectal area. She wiped Evan's rectal area with a towel, which she later gave to law enforcement. Mother asked father to leave, and he said he couldn't believe " 'you think I'd do that to my own son.' " Hector later asked mother, " 'What if he [Evan] was abused? How would they be able to find out it was me?' "

The day after the bath incident, mother took Evan to a hospital. A forensic examination was "[n]ormal," "can neither confirm nor negate sexual abuse." Forensic testing found no DNA belonging to father on Evan and no semen on the towel.

Mother also reported a prior incident in which she opened a bedroom door and saw father lying down with Evan atop him. Father hurriedly placed Evan next to him, but father was slow to get off the bed, because, mother suspected, he was waiting for his erection to subside.

Mother's other child, a daughter by another man, denied that father abused her. Other minors who lived in the home similarly denied abuse. Evan was preverbal and unable to give a statement.

On August 6, 2013, the juvenile court sustained the allegations in the petition. The court declared Evan a dependent of the court, removed Evan from father's custody, and ordered limited monitored visits with father and family reunification services, including sexual abuse counseling. The court said: "Clearly, this is a case of circumstantial evidence, but nevertheless, circumstantial evidence is believed to be just as strong as direct evidence, and I do think that the circumstantial evidence is convincing.

---

[2] This was a reference to mother's father.

[¶] Father did act in a very suspicious manner in many ways, and I do think that the Department has met its burden . . . ."

Father appeals.

## DISCUSSION

**I.      The assumption of jurisdiction.**

Father's first contention is there is insufficient evidence to support the juvenile court's order sustaining jurisdiction under subdivisions (b) and (d) of section 300.[3]  We disagree.

At a jurisdictional hearing, " 'proof by a preponderance of evidence, legally admissible in the trial of civil cases must be adduced to support a finding that the minor[s] [are] person[s] described by Section 300.'  (§ 355.)"  (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 198.)  "[T]he purpose of the provisions of this chapter relating to dependent children is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of [the] children who are at risk of that harm."  (§ 300.2; see also *In re I.J.* (2013) 56 Cal.4th 766, 773 [section 300 does not require that a child be actually abused; it requires only a " 'substantial risk' " the child will be abused or neglected].)

"On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings.  [Citation.] Substantial evidence is evidence that is reasonable, credible, and of solid value.

---

[3]      Section 300, subdivision (b), states in relevant part that jurisdiction over a child arises when the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

Section 300, subdivision (d) states in relevant part that jurisdiction over a child arises when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . by his or her parent . . . ."

4

[Citation.]" (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 549.) In reviewing a record, an appellate court defers to the lower court on issues involving the credibility of evidence and witnesses. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734; *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1427.)

Citing evidence showing he did *not* sexually abuse Evan, father argues that contrary evidence from mother was insufficient to support jurisdiction. Certainly, there was evidence to support father's denial he abused his son. Father's semen was not found on the bath towel mother used to wipe the white fluid from Evan. Father's DNA was not found on Evan. Evan's medical examination was "normal," although it could neither confirm nor negate whether sexual abuse occurred. None of the other children who lived in Evan's home and were exposed to father reported abuse or inappropriate touching.

Despite this evidence, the juvenile court found father's behavior to be suspicious, and the record supports that finding. Mother, herself a victim of sexual abuse, told father to keep doors open and unlocked when her children were behind them. Knowing this preference, he nonetheless locked the bathroom door and failed to immediately open it when mother knocked. Mother could hear father turning off the shower and flushing the toilet. His explanation—he didn't want Evan to be affected by a sudden change in water temperature when the toilet was flushed—was suspicious, because father knew that the temperature did not fluctuate in that way. When mother asked why father had turned off the shower, father said he couldn't believe " 'you think that about me,' " although mother had not yet accused father of abusing Evan. Then, when mother was drying Evan, she saw redness on the child's rectal area and a white fluid that looked like male ejaculate. Again, without prompting from mother, father asked, " '[W]hat's that smell? . . . [Y]ou know who I never trusted . . . your dad.' " Mother also recalled a prior incident where father hurriedly moved Evan away from him and delayed getting up from the bed, to hide, mother thought, father's erection.

5

Father cites cases in which evidence of sexual abuse was arguably stronger than here; for example, where the child makes statements about the abuse (see, e.g., *In re R.C.* (2011) 196 Cal.App.4th 741; *In re Jordan R.* (2012) 205 Cal.App.4th 111; *In re Mariah T.* (2008) 159 Cal.App.4th 428; *In re P.A.* (2006) 144 Cal.App.4th 1339; *In re Clara B.* (1993) 20 Cal.App.4th 988), or where there is physical evidence of abuse and statements by the child about the abuse (see, e.g., *In re Clara B.*, at p. 1001 [medical examination evidenced sexual abuse]; *In re Carlos T.* (2009) 174 Cal.App.4th 795 [11-year-old became pregnant as a result of being raped by her father; father's son gave statements that father also sexually abused him]).

Unlike these cases, the child at issue, Evan, was preverbal at the time of the alleged abuse. He could not speak to any abuse, unlike the older children in the cases father cites. Even if we agreed that those cases provided a stronger basis on which to sustain jurisdiction, we do not agree that the evidence here is insufficient to do so. As we have said, mother saw physical evidence of possible abuse; namely, a white fluid that smelled and looked like semen and redness on Evan's rectal area. Father also behaved suspiciously and made suspicious statements. This constitutes sufficient evidence to sustain jurisdiction over Evan under section 300, subdivisions (b) and (d).

## II. The juvenile court's order of removal.

The juvenile court removed Evan from his father's custody after finding by clear and convincing evidence that leaving him with father created a substantial danger to Evan's physical and emotional well-being and that there were no reasonable means to protect Evan short of removing him from father's custody. (§ 361, subd. (c).)[4] " ' 'A removal order is proper if it is based on proof of parental inability to provide proper care

---

[4] The Department contends that father cannot challenge the removal order on appeal because he did not object to it in the juvenile court. Father, however, objected to jurisdiction, which encompassed the dispositional orders, including removal. Also, father's counsel's request, made once the court found it had jurisdiction over Evan, that the court follow the Department's recommendation regarding monitored visits for father does not preclude him from raising the removal order on appeal. He did not "invite error" as the Department suggests.

for the minor and proof of a potential detriment to the minor if he or she remains with the parent.  [Citation.]  The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.  [Citation.]' [Citation.]" (*In re Miguel C.* (2011) 198 Cal.App.4th 965, 969.)

Father challenges the juvenile court's removal order on the basis that its finding of jurisdiction was not supported by substantial evidence.  Because we affirm the court's finding of jurisdiction, father's similar argument here also fails.  We therefore affirm the court's removal order.  (See *In re James R.* (2009) 176 Cal.App.4th 129, 137.)

**DISPOSITION**

The jurisdiction and removal orders of the juvenile court are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.